**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | : | **CRIMINAL NO. 05-56** |
| | : | |
| **v.** | : | **CIVIL NO. 10-6836** |
| | : | |
| **TEDDY YOUNG** | : | |

**M E M O R A N D U M**

STENGEL, J.                                                                    October 24, 2013

Pending before the Court is the motion of Defendant Teddy Young, Jr. ("Young") filed pursuant to 28 U.S.C. § 2255. For the reasons that follow, the motion is denied without an evidentiary hearing.

## I.     PROCEDURAL HISTORY AND FACTUAL BACKGROUND

On May 3, 2007, Young was convicted of conspiracy to distribute more than one kilogram of heroin in violation of 21 U.S.C. § 846, multiple counts of using communication facilities in drug trafficking offenses in violation of 21 U.S.C. § 843(b), and possession of more than 100 grams of heroin with intent to distribute in violation of 21 U.S.C. § 841(a)(1).[1] Doc. No. 520; Pet. at 2; Resp. at 2-3. On December 6, 2007, he was sentenced to life imprisonment. Doc. Nos. 668, 673; Pet. at 2; Resp. at 3. The United States Court of Appeals for the Third Circuit affirmed Young's conviction and sentence on July 27, 2009, see United States v. Lee, 339 Fed. App'x 153, 155-56 (3d Cir. 2009), and his request for a rehearing *en banc* was denied on August 21, 2009. Doc. Nos. 729, 730, 731; Pet. at 3. He did not file a petition for a writ of certiorari to the United States Supreme Court. On September 28, 2010, Young filed the pending motion under 28 U.S.C. § 2255, alleging various claims for ineffectiveness of counsel and Fifth Amendment violations.

---

[1] Young was acquitted of two counts of using a communications facility, and one count of possession of a firearm during a drug trafficking crime, 18 U.S.C. § 924C(c)(1).

The Court of Appeals set forth the essential facts of the case in its opinion affirming the convictions of Young and his codefendants David Lee and Theodore Young, Sr.[2]:

> Beginning on approximately November 17, 2000 through approximately June 6, 2002, Teddy Young was the leader of a heroin distribution organization. Young and his co-conspirators, including his father, Theodore Young, Sr., received bulk heroin from sources in New York City and other places, and cut, processed, packaged, and stamped the heroin into bundles for resale in Philadelphia. As the leader of the organization, Young directed the activities of the sellers and cuthouse workers. David Lee was a street reseller for the [Young Heroin Organization ("YHO")]. Lee sold bundled heroin obtained from the YHO to an undercover police officer on seven occasions from November 17, 2000 to March 29, 2001. Lee also assisted the YHO in creating brand names to stamp on the bundled heroin for redistribution in the streets. The YHO processed heroin at two principal locations in Philadelphia, one at 5302 Wayne Avenue (the Wayne Avenue cuthouse) and one at 7665 Washington Lane (the Washington Lane cuthouse).
>
> Authorities began an investigation into Young and the YHO in 1999, after a cooperating witness brought information to the FBI. As part of the investigation, the FBI instructed Marlon Gocking, a confidential informant, to meet with Young, with Gocking representing himself as a Ghanian heroin distributor. During this meeting, which the FBI recorded, Young stated that he sold "dope," and that he distributed almost "one brick" of heroin per week. After further investigation, FBI Special Agent Robert M. Parks sought a court order authorizing a wiretap of Young's cellular phone. On September 5, 2001, the court authorized the initial wiretap for interception of electronic communications, pursuant to 18 U.S.C. § 2516(3). The order was extended several times, until June 8, 2002. On June 6, 2002, based on information obtained through the investigation, including the wiretaps, authorities sought and received ten warrants to search, among other locations, Young's residence, Young Sr.'s residence, the Wayne Avenue cuthouse, and the Washington Lane cuthouse.
>
> On February 2, 2005, a federal grand jury returned a 35-count indictment charging Lee, Young, and Young, Sr. (collectively, "Appellants"), along with 16 others, with a variety of drug trafficking-related offenses. The indictment was unsealed on February 4, 2005, and the majority of those charged were arrested.
>
> Each of the appellants was charged in Count 1, a two-object conspiracy, lasting from approximately November 17, 2000, to approximately June 6, 2002. Appellants were charged with conspiracy to distribute more than one kilogram of heroin and with conspiracy to distribute heroin within 1,000 feet of a school. Individually, each of the appellants was charged with additional counts. Young was also charged in Counts 10-25, 28, and 29 with use of a communication device to

---

[2] Theodore Young, Sr. is referred to in the trial transcripts and in Defendant's brief as "Curly."

further drug trafficking, in violation of 21 U.S.C. § 843(b); in Count 30 with possession of a firearm in furtherance of a drug trafficking crime, in violation of 18 U.S.C. § 924(c)(1); and in Count 31 with possession of more than 100 grams of heroin with intent to distribute, in violation of 21 U.S.C. § 841(a)(1) and (b)(1).

Young, Sr. was charged in Count 12 with use of a communication device to further drug trafficking, in violation of 21 U.S.C. § 843(b); and in Count 32 with possession of heroin with intent to distribute, in violation of 21 U.S.C. § 841(a)(1), (b)(1)(C). Lee was charged in Counts 2 through 8 with distribution of heroin, in violation of 21 U.S.C. § 841(a)(1), (b)(1)(C); and in Count 28 with use of a communication device to further drug trafficking, in violation of 21 U.S.C. § 843(b).

On April 10, 2006, prior to trial, Young filed a motion to suppress all physical and electronic evidence seized as a result of the wiretaps and search warrants, arguing that the affidavits failed to establish sufficient "necessity" to warrant the wiretaps. Young further moved to suppress any statements made during the search of his residence. Young, Sr. and Lee joined in Young's motions. On August 16, 2006, 2006 WL 2338259, following a hearing, the District Court denied all of the motions to suppress.[3]

Trial commenced on April 9, 2007. Before proceedings began, the District Court held a hearing outside the presence of the jury regarding Young's motion to suppress evidence based on the warrantless seizure of his vehicle, and his motion to

---

[3] Pursuant to 18 U.S.C. § 2518(1)(c), an application for an order authorizing a wiretap must contain, in relevant part, "a full and complete statement as to whether or not other investigative procedures have been tried and failed or why they reasonably appear to be unlikely to succeed if tried or to be too dangerous." I determined that the "affidavit demonstrated sufficient necessity, noting that the Government detailed each of the investigative techniques and steps it had already attempted, such as the use of undercover police officers, the use of confidential informants, and the use of pen registers and trap and trace devices." Lee, 339 Fed. App'x at 157. I found that, "'[f]ar from being boilerplate language, the affidavit discussed the particulars of each investigative procedure as it related to this case, as well as its limitations.'" Id. In addition, the "'affidavit detailed other investigative steps, and explained why those steps were not reasonably likely to further the investigation.'" Id. I noted that, while "'some critical information had been obtained using traditional investigative methods,'" the wiretap "'was necessary to fully identify co-conspirators and their roles,'" which, at the time of the application, remained unclear. Id. The affidavit also detailed the inability of authorities, using traditional techniques, to identify the financial accounts information, the sources and supplies of heroin, and the location and disposition of illegally-obtained proceeds. Id. The Third Circuit affirmed that decision, stating "[a]s this Court held in United States v. Armocida, 515 F.2d 29 (3d Cir. 1975), 'it is unrealistic to require the termination of an investigation before the entire scope of the narcotics distribution network is uncovered and the identity of its participants learned.' . . . Here, the District Court acted well within its discretion in finding necessity in its authorization of the wiretap." Lee, 339 F. App'x at 157.

preclude the Government from playing the May 25, 2000 recording between Gocking, the confidential informant, and Young. The District Court denied both motions. On May 3, 2007, a jury convicted Appellants on all remaining counts, with exception of Counts 20, 22, and 30, of which Young was acquitted. On October 1, 2007, Lee was sentenced to 300 months of incarceration and 10 years of supervised release, in addition to a fine and special assessment. On December 6, 2007, Young was sentenced to life imprisonment and 10 years of supervised release, in addition to a fine and special assessment. Also on December 6, 2007, Young Sr. was sentenced to 144 months of imprisonment and 10 years of supervised release, in addition to a fine and special assessment.

United States v. Lee, 339 Fed. App'x at 155-56 (footnotes omitted).

In his motion brought pursuant to 28 U.S.C. § 2255, Young alleges seven claims for violations of his constitutional rights. See Def. Br. at 18-36. The first five claims assert instances of ineffectiveness of counsel arising from trial counsel's: (1) failure to object to the expert testimony of FBI Special Agent Robert Parks ("Parks"); (2) failure to give reasonably competent professional advice in connection with Young's decision to accept or reject the Government's plea offer; (3) failure to file a motion for disclosure of the "Thomas" wiretap[4] to

---

[4] The Thomas wiretap was also at issue in the pre-trial proceedings in the case. Young moved to suppress all physical and electronic evidence seized as a result of a wiretap on his own phone ("the Young wiretap"). (Dkt. Entry 318.) In support of the application for the Young wiretap, the government provided the court with an affidavit sworn by Special Agent Parks referencing another court-approved wiretap involving a separate investigation, in which Theodore Young, Sr. was intercepted having conversations with one Gerald Thomas. Young was not intercepted in the Thomas wiretap. All defendants in this case were provided with discovery regarding the Young wiretap, but no discovery was provided regarding the Thomas wiretap.

In his motion to suppress, Young argued inter alia that any evidence obtained as a result of the Young wiretap were fruits of the previous, allegedly illegal, Thomas wiretap. In the decision denying the motion, I held that Young lacked standing to challenge the Thomas wiretap because he was not a party to that wiretap and that wiretap was not directed against him. United States v. Young, Civ. A. No. 05-56 (Aug. 17, 2006) slip op. at 3-4 (stating that pursuant to Title III of the Omnibus Crime Control and Safe Streets Act, 18 U.S.C. § 2510, 2518(10)(a), only "aggrieved" parties have standing to challenge the admissibility of evidence found through a wiretap; aggrieved person is one who was a party to any intercepted wire, oral, or electronic communication or a person against whom the interception was directed). I went on to find that the Parks affidavit established sufficient necessity for the Young wiretap. Id., slip op. at 5-8.)

4

show that Young was not the leader of the YHO; (4) failure to object to the jury instruction describing drug quantity as a "secondary" question; and (5) failure to object to the jury instruction on the use of accomplice testimony. Young's sixth and seventh claims allege that he was convicted and sentenced in violation of the Fifth Amendment right to a fair trial. His sixth claim alleges that the Government's refusal to disclose the Thomas wiretap violated <u>Brady v. Maryland</u>, 373 U.S. 83, 87 (1963). His seventh claim alleges that the Government interfered with his right to effective assistance of counsel in failing to provide the alleged <u>Brady</u> material that was essential to his defense.

## II.    LEGAL STANDARD

Section 2255 provides:

> A prisoner in custody under sentence of a court established by Act of Congress claiming the right to be released upon the ground that the sentence was imposed in violation of the Constitution or laws of the United States . . . or is otherwise subject to collateral attack, may move the court which imposed the sentence to vacate, set aside or correct the sentence**.**

28 U.S.C. § 2255(a). Relief under Section 2255 requires an error of law or fact constituting a "'fundamental defect which inherently results in a complete miscarriage of justice.'" <u>United States v. Eakman</u>, 378 F.3d 294, 298 (3d Cir. 2004) (quoting <u>United States v. Addonizio</u>, 442 U.S. 178, 185 (1979)). A court, in reviewing a Section 2255 motion, applies a more exacting standard than the plain-error standard applied in reviewing a direct appeal. <u>United States v. Frady</u>, 456 U.S. 152, 165-166 n.15 (1982).

A court has the discretion in determining whether to hold an evidentiary hearing on a Section 2255 motion. <u>United States v. Booth</u>, 432 F.3d 542, 545 (3d Cir. 2005); <u>Gov't of the Virgin Islands v. Forte</u>, 865 F.2d 59, 62 (3d Cir. 1989). In exercising discretion, the court "must

accept the truth of the movant's factual allegations unless they are clearly frivolous on the basis of the existing record." Booth, 432 F.3d at 545 (quoting Forte, 865 F.2d at 62). The court may summarily dismiss the motion, rather than hold an evidentiary hearing, only when "the motion, files, and records 'show conclusively that the movant is not entitled to relief.'" United States v. Nahodil, 36 F.3d 323, 326 (3d Cir. 1994) (quoting United States v. Day, 969 F.2d 39, 41-42 (3d Cir. 1992)). In contrast to the standard of review in considering the merits of a Section 2255 motion, "the standard governing . . . requests [for evidentiary hearings] establishes a reasonably low threshold for habeas petitioners to meet." United States v. McCoy, 410 F.3d 124, 134 (3d Cir. 2005) (alteration in original) (internal citations omitted).

## III.    DISCUSSION

### A.    The Strickland standard.

Young's first five claims allege separate instances of ineffective assistance of trial counsel. See Def. Br. at 20-27. Claims of ineffective assistance of counsel are governed by Strickland v. Washington, 466 U.S. 668 (1984). In Strickland, the United States Supreme Court set forth a two-pronged standard for a petitioner seeking relief on the grounds of ineffective assistance:

> First, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable.

Strickland, 466 U.S. at 687. Because "it is all too easy for a court, examining counsel's defense after it has proved unsuccessful, to conclude that a particular act or omission of counsel was unreasonable," the court must be "highly deferential" to counsel's performance and "indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional

assistance." Id. at 689. In determining prejudice, "the question is whether there is a reasonable probability that, absent the errors, the fact finder would have had a reasonable doubt respecting guilt." Id. at 695.

**B.      Failure to object to the testimony of Special Agent Parks.**

Young first claims that trial counsel provided ineffective performance for not objecting to Parks' expert testimony on the grounds that it "communicated out-of-court testimonial statements of cooperating witnesses and confidential informants directly to the jury in the guise of an expert opinion." Def. Br. at 20. At trial, Young's counsel, Arnold Joseph, objected only to Parks' qualifications to give expert testimony after conducting a lengthy voir dire of his qualifications. (N.T. 4/10/2007 at 172-206.) That objection was overruled. (N.T. at 208.) On direct appeal the Third Circuit affirmed the ruling that Park qualified as an expert. See Lee, 339 Fed. App'x at 159.[5] Young asserts now that trial counsel should have objected "on the ground that [Parks']

_____

[5] The Third Circuit stated:

Parks, an FBI agent for over eleven years, testified that he received training in narcotics and drug distribution organizations, participated in over 100 narcotics investigations, over 100 related searches, and wiretaps covering thousands of conversations concerning drug activity, and that he debriefed numerous drug dealers and individuals involved with drug distribution. In addition, Agent Parks testified that he consulted manuals and guidelines issued by the Drug Enforcement Administration ("DEA") and the FBI to stay current. The District Court did not abuse its discretion in ruling that through such practical experience and training, Agent Parks gained specialized knowledge in the field of drug distribution networks and narcotics trafficking. That this was Agent Parks' first time testifying as an expert does not undermine those qualifications.

Agent Parks testified on aspects of drug trafficking in the Philadelphia area, none of which are common knowledge among lay persons serving as jurors. Among other points, Agent Parks testified regarding the manner in which heroin is typically packaged, bundled, stamped and sealed in the Philadelphia area, how many individual packets are in a bundle, and how those packets and bundles of packets are usually priced. Specifically, Agent Parks testified that heroin typically costs between $70 and $90 dollars per gram, and that, based on his conversations

expert testimony was unnecessary, was not helpful to the jury, and was a violation of the hearsay rule/Confrontation Clause because it relied on the transmission directly to the jury of the out-of-court statements of confidential informants and cooperating witnesses." Def. Br. at 22.

To the extent that his Section 2255 claim is based upon the assertions that Parks' expert testimony was unnecessary and not helpful to the jury, these arguments are improper. The Third Circuit has already affirmed on direct appeal the ruling that the testimony was useful and necessary. See Lee, 339 Fed. App'x at 159. Where issues have been adjudicated on direct appeal they cannot be relitigated in a motion under Section 2255. See United States v. DeRewal, 10 F.3d 100, 105 n. 4 (3d Cir. 1993) ("'Section 2255 generally 'may not be employed to relitigate questions which were raised and considered on direct appeal.'") (quoting Barton v. United States, 791 F.2d 265, 267 (2d Cir. 1986)); see also United States v. Orejuela, 639 F.2d 1055, 1057 (3d Cir. 1981) ("Once a legal argument has been litigated and decided adversely to a criminal defendant at his trial and on direct appeal, it is within the discretion of the district court to decline to reconsider those arguments if raised again in collateral proceedings under 28 U.S.C. § 2255."). Because the

---

with the DEA lab, the amount of heroin in a bag generally varies from .03–.05 grams, resulting in an average of .04 grams. Agent Parks further testified that resellers typically purchased heroin in bundled format, as opposed to individual packets. In addition, Agent Parks testified to some of the common names for heroin in the Philadelphia area, including "dope" and "H." Agent Parks also testified concerning the relationship between resellers and suppliers, explaining that money may be paid to the supplier up-front, at first, but that the reseller may be "fronted" the heroin once trust is established between the two. We conclude that Agent Parks' testimony was both helpful and relevant, and that it meets the threshold of Rule 702. See id. 280 F.3d at 341–42 (observing that several courts of appeals have consistently admitted testimony concerning the modus operandi of drug trafficking); see also United States v. Figueroa-Lopez, 125 F.3d 1241, 1244-45 (9th Cir. 1997).

Lee, 339 F. App'x at 159.

issue of whether Parks' expert testimony was useful and necessary to the jury has already be adjudicated, Young can make no meritorious argument that counsel was ineffective for failing to object on those grounds.

Young's hearsay/Confrontation Clause argument is based on a portion of Parks' testimony in which the witness affirmed that his "knowledge in this case [was] based upon what somebody else told [him]." Def. Br. at 22 (quoting N.T. 4/10/07 at 193-94).[6] Notably, Young does not identify any specific portion of Parks' testimony that violated the Confrontation Clause; only that Parks admitted that his knowledge about the case was based upon what others told him. Young asserts, upon that statement alone, that Parks "fed the jury a steady stream of facts he learned from others, including the confidential informants, and accomplice witnesses, without the application of any alleged expertise." Id.

The Sixth Amendment to the Constitution provides that "[i]n all criminal prosecutions, the accused shall enjoy the right . . . to be confronted with the witnesses against him." U.S. CONST. amend. VI. The Confrontation Clause is violated when hearsay evidence is admitted as substantive evidence against a defendant who has no opportunity to cross-examine the declarant. Kentucky v. Stincer, 482 U.S. 730, 737 (1987). However, not all hearsay implicates the core

---

[6] During cross-examination, Parks testified:

Q.     Isn't it accurate that one of the ways you learn to decipher what somebody is saying is to go to one of the members of the conspiracy and ask that [sic] what things mean?
A.     Yes.
Q.     So, for a large part, you're knowledge in this case is based upon what somebody else told you, isn't that right.
A.     In this case, yes.

N.T. 4/10/07 at 193-94.

concerns of the Sixth Amendment. Crawford v. Washington, 541 U.S. 36, 51 (2004). Rather, a defendant's Sixth Amendment rights are violated by the introduction of "testimonial" hearsay into evidence, unless the declarant is unavailable and the defendant has had a prior opportunity for cross-examination. Id. at 53, 68; United States v. Berrios, 676 F.3d 118, 126 (3d Cir. 2012) ("the Confrontation Clause protects the defendant only against the introduction of testimonial hearsay statements").

In United States v. Hendricks, 395 F.3d 173, 175 (3d Cir. 2005), the Third Circuit interpreted the meaning of "testimonial evidence" as used in Crawford and determined its application to evidence of conversations between the defendant and a confidential informant (who had since died). As the Supreme Court observed in Crawford, the Confrontation Clause applies to "'witnesses' against the accused — in other words, those who bear testimony." Hendricks, 395 F.3d at 178 (quoting Crawford, 541 U.S. at 51) (internal quotation omitted). In Crawford, the Court further observed that "testimony is typically "[a] solemn declaration or affirmation made for the purpose of establishing or proving some fact." Hendricks, 395 F.3d at 178 (quoting Crawford, 541 U.S. at 51) (internal quotation omitted). The Hendricks court reasoned that because Crawford read the Confrontation Clause as concerned primarily with testimonial hearsay, Crawford provides no Confrontation Clause protection to statements offered for a purpose other than to establish their truth. Id. at 184.

As described by the Third Circuit on direct appeal, Parks' role as an expert witness was to draw upon his background as an FBI Special Agent to explain to the jury the jargon that was generally used in the drug trade, which was not necessarily specific to the YHO and which did not serve to directly implicate Young. Young's assertion, that Parks "injected a steady stream of hearsay into the trial," is unsupported by any specific examples of improper testimonial hearsay.

Because Parks' testimony only concerned aspects of drug trafficking in the Philadelphia area, including the manner in which heroin is packaged, bundled, stamped, sealed, and priced, the common street names for heroin, and the relationship between resellers and suppliers, and Young has identified no specific impermissible testimonial hearsay in Parks' testimony, I conclude that there is no reasonable probability that the outcome his trial would have been different if counsel had raised a baseless objection thereto.[7]

## C. Trial counsel's failure to give Young reasonably competent advice in regards to the plea bargain decision.

Young next argues that counsel's performance was deficient because he did not recommend that Young accept the Government's plea offer. He asserts that, "if [he] had been told that conviction was certain and that he was facing a life sentence under the guidelines if he stood trial and lost, he would have accepted the government's plea offer." Def. Br. at 24. He concedes that Attorney Sciolla informed him of the plea offer, but asserts that Sciolla "did not explain that conviction was certain and did not explain the guidelines that applied with a guilty plea versus the guidelines that applied if [he] stood trial and lost. . . ." Def. Br. at 24. He also asserts that "Sciolla did not recommend that [he] accept the offer," and that Attorney Joseph also did not recommend that he accept the plea offer. Id.

The Third Circuit has explicitly held that counsel's advice in connection with a guilty plea must be "'within the range of competence demanded of attorneys in criminal cases.'" Boyd v. Waymart, 579 F.3d 330, 350 (3d Cir. 2009) (quoting Hill v. Lockhart, 474 U.S. 52, 56 (1985)).

---

[7] I also conclude that, because Young has failed to cite any specific examples of improper testimonial hearsay, an evidentiary hearing is not required before dismissing the claim. As noted, a Section 2255 claim may be summarily dismissed without an evidentiary hearing, when "the motion, files, and records 'show conclusively that the movant is not entitled to relief.'" Nahodil, 36 F.3d at 326. Young has failed to meet even the low threshold necessary to warrant an evidentiary hearing on this issue.

Counsel's performance must therefore "meet the standards of objective reasonableness." Id. Although it is the defendant's ultimate choice as to whether to accept the plea offer, counsel must reasonably inform the defendant regarding his potential sentencing exposure and the various options the defendant has in the plea bargaining stage of a criminal case. United States v. Day, 969 F.2d 40, 43 (3d Cir. 1992) (holding that the defendant has the right to make a reasonably informed decision whether to accept a plea offer; knowledge of the comparative sentence exposure between standing trial and accepting a plea offer will often be crucial to the decision whether to plead guilty); Boyd, 579 F.3d at 353 (holding that counsel's "constitutionally required performance is that of complete disclosure in conjunction with full advice and counsel regarding the client's potential sentencing exposure, options regarding plea bargains, and the potential consequences with respect to each option").

The existing record shows that, on or about August 17, 2006, the Government made a formal plea offer to Young through his first attorney, Guy Sciolla,[8] and again through his trial counsel, Arnold Joseph, offering to dismiss Count 30 of the indictment, which charged Young with possession of a firearm in furtherance of a drug trafficking crime. See Gov. Br. Ex. A, B. Young did not accept the plea offer and went to trial. He was then convicted of all charges except for Count 30, and two other counts of using a communications device in a drug trafficking offense. At the sentencing hearing, Attorney Joseph stated categorically that the offers were rejected, not because they were not properly conveyed and explained to the Defendant, but because they were unacceptable to him:

> Mr. Young didn't plead guilty and Mr. Young's position as I've set forth in the sentencing memorandum is that he didn't plead guilty because he was never

---

[8] On September 28, 2006, Sciola withdrew his appearance due to a potential conflict of interest. (Dkt. No. 419.)

offered an opportunity to plead guilty.

I understand that there were offers made, but he was never offered an opportunity to plead guilty and to receive a sentence that was more commensurate with his role in the crime.

Now, there may be differences of opinion on that, however, that [is] Mr. Young's position.

THE COURT: I saw that in your memo and if I could clarify that. Are you saying that he was not offered a deal by the government that was acceptable to him - -

MR. JOSEPH: I'm saying that he - -

THE COURT: - - and that that's why he didn't plead?

MR. JOSHEPH: Yes, that's the short answer.

N.T. 12/6/07 at 42. Attorney Joseph went on to explain:

The government did offer a deal to Mr. Young and they offered a deal prior to my involvement in the case, so I won't speak to that in great detail and I believe Mr. Young can speak to that in great detail.

But, even after I became involved in the case I remember quite vividly having a conversation with [AUSA] Mr. Velez where he made an offer to me which I conveyed to Mr. Young, but that offer I believe it was to plead.

I don't remember to specifics of it, but at the end of the day if you were to have taken the base line offense level and add all the enhancements, which the government was going to suggest that you did, Mr. Velez can correct me if I'm wrong, but I think Mr. Velez said to me - - I don't think, I know he said to me that he was still going to ask for the enhancements that we have today.

Perhaps not the gun enhancement - - well, actually probably involving the gun as well, as a matter of fact it was part of the trafficking crime, the gun used in furtherance of the trafficking crime, that the best Mr. Young could possibly have hoped for was a twenty-seven year sentence based upon all of the calculations.

*So, Mr. Young made the conclusion or reached the conclusion that because that was what he was facing, and he wasn't given an opportunity to plead to a lower tier and to avoid the involvement of a gun used in furtherance of a drug trafficking offense, that he was placed in a position where he had no choice but to go to trial.*

N.T. 12/6/07 at 42-44 (emphasis added).

Later, in his allocution, Young confirmed that the Government's plea offers were conveyed to him, that he understood the offers, and rejected them because he did not think the Government offered him a sufficiently beneficial deal:

I also would like to say that like my lawyer just - - just stated, that I really

never was offered any type of plea, plea to come in here and to just plea out, where I wouldn't have to go through - - or this Court wouldn't have to go through this lengthy trial that we went through.

. . .

But, after all of this, and when the government - - the government in their own affidavit say that they were targeting my suppliers, when they found out who the suppliers is, they let - - they give him a deal that's unbelievable to me, they say look, just plea to this even though Mr. Perozo cooperated, Mr. De La Cruz didn't cooperate and he sent word to me, like he said, he said "listen, he said, like I'm pleaing out to three kilo. . . . So I says - - *I said why you never come to me and tell me to plea out*, because I would have pleaded for it, pleaded to that and they let you judge on what you were going to judge on, and give me the time that was appropriate for me. *But, for me never having no type of offer like that, it was outstanding what they was asking me - - what they was telling me to plea to*.

. . .

I just don't understand how every - - well, not everybody, a majority of these guys involved in the situation got a chance - - well, most of - - some of them cooperated. But I don't understand why everything was thrown on me.

N.T. 12/6/07 at 53-55 (emphasis added). While the first highlighted portion of the allocution may be interpreted as suggesting that *counsel* never advised him to accept the plea offered by the Government, the second highlighted portion makes clear that counsel "was telling [him] to plea," but he himself chose not to accept the plea that was actually offered because it was more harsh than those offered to others involved in the drug conspiracy, whom Mr. Young considered to be at least as culpable.

Based on this record, I conclude that Young's assertion that counsel was constitutionally ineffective for failing to advise him to accept the plea is completely meritless. He admits that counsel did in fact advise him to accept the plea, but he refused the advice. The statements of Attorney Joseph and Defendant's own allocution show that Young received "complete disclosure in conjunction with full advice and counsel regarding [his] potential sentencing exposure, options regarding plea bargains, and the potential consequences with respect to each option." Boyd, 579 F.3d at 353. Given this record, I also find that Young is not shown that he is entitled to an

evidentiary hearing.

**D.      The Thomas wiretap claims.**

Young raises three claims concerning the Thomas wiretap.   He first argues that counsel was ineffective for failing to file a motion pursuant to 18 U.S.C. § 3504(a)(1)[9] for disclosure of the Thomas wiretap "[a]s soon as it became evident that the Government was taking the position that [Young] was the leader of the TYO, and [Young's] father 'Curly' was not the leader."   Def. Br at 25.   Second, he asserts that the Thomas wiretap was Brady material that the Government failed to produce it to the defense.   Id. at 28.   Finally, he argues that, by failing to disclose the Thomas wiretap, the Government interfered with his right to effective counsel.   I conclude that none of these issues has any merit.

**1.      The ineffective assistance claim.**

Young's argument that counsel was ineffective for failing to make a Section 3504(a)(1) motion is rejected for the same reasons that I already rejected his pretrial motion pursuant to Title III of the Omnibus Crime Control and Safe Streets Act, 18 U.S.C. §§ 2510, 2518(10)(a).   Like Title III, Section 3504 allows only "aggrieved" parties to challenge the admissibility of evidence as unlawfully obtained.   Thus, a person who has no standing to challenge the admissibility of wiretap evidence under Title III, also has no standing to make the same challenge under Section

_____

[9] The statute provides:

In any trial, hearing, or other proceeding in or before any court, grand jury, department, officer, agency, regulatory body, or other authority of the United States--
> (1) upon a claim by a party aggrieved that evidence is inadmissible because it is the primary product of an unlawful act or because it was obtained by the exploitation of an unlawful act, the opponent of the claim shall affirm or deny the occurrence of the alleged unlawful act. . . .

18 U.S.C. § 3504(a)(1)

3504.  See United States v. Weiner, 418 F. Supp. 941, 950 n. 1 (M.D. Pa. 1976) (holding that,

although Section 3504 "itself does not define the term 'person aggrieved,' Title III of the Omnibus

Crime Control and Safe Streets Act of 1968, 18 U.S.C. § 2510 et seq., to which section 3504

expressly relates and in light of which section 3504 should be construed, defines an 'aggrieved

person' as 'a person who was a party to any intercepted wire or oral communication or a person

against whom the interception was directed.' . . .  Applying that definition to section 3504, it

appears that only those who claim their own conversations were illegally monitored or against

whom it was directed have standing to require the government to respond under section 3504.

This conclusion is supported by the legislative history of section 3504, which indicates that the

government is required to affirm or deny unlawful electronic surveillance only upon a claim 'by

the defendant with standing to challenge the alleged unlawful conduct.'  H.R. No. 91-1549, 91st

Cong. 2d Sess. (1970), 2 U.S. Code Congressional and Administrative News 4027 (1970)

(emphasis supplied)"); United States v. Hearst, 412 F. Supp. 863, 869 (N.D. Cal. 1975) (holding

under Section 3504, that a defendant is without standing to complain, and therefore without

standing to require disclosure, of any electronic surveillance conducted of persons other than

herself); see also Gelbard v. United States, 408 U.S. 41, 54 (1972) (stating that Section 3504 tracks

Title III, Section 2515, in its application to grand jury proceedings).  Because Young would have

had no standing to make a claim under Section 3504, counsel cannot be deemed to have been

constitutionally ineffective for failing to raise the issue.

### 2.    The **Brady** claim.

Next, Young asserts that the Thomas wiretap evidence was Brady material that the

Government failed to disclose to the defense.  A claim under Brady v. Maryland, 473 U.S. 83

(1963), has three components:  (1) the undisclosed evidence must be favorable to the accused

either because it is exculpatory or because it is impeaching; (2) the evidence must have been suppressed by the Government, either willfully or inadvertently; and (3) the undisclosed evidence must be material in that the absence of this evidence must have resulted in a trial which was unfair. Strickler v. Greene, 527 U.S. 280, 283-284 (1999); Hollman v. Wilson, 158 F.3d 177 (3d Cir. 1998); see also United States v. Pelullo, 399 F.3d 197, 209 (3d Cir. 2005) (stating that suppressed evidence can be material to either guilt or punishment). The Government argues that the issue is procedurally defaulted, and even if were not, the Thomas wiretap was not Brady material. The Government is correct on both points.

Like his motion pursuant to Title III, Young could have argued that the Thomas wiretap was Brady material in pretrial proceedings, during trial or in post-trial proceedings, but failed to do so. Therefore, Young must satisfy the cause and actual prejudice standard, or demonstrate actual innocence, to excuse the procedural default. See Bousley v. United States, 523 U.S. 614, 622 (1998) ("Where a defendant has procedurally defaulted a claim by failing to raise it on direct review, the claim may be raised in habeas only if the defendant can first demonstrate either 'cause' and actual 'prejudice,' or that he is 'actually innocent.'" (internal citations omitted)), United States v. Frady, 455 U.S 152, 167 (1982) ("to obtain collateral relief based on trial errors to which no contemporaneous objection was made . . . a defendant must show both . . . cause . . . and actual prejudice). To show the cause element of the cause and prejudice test, a defendant must point "to some objective factor external to the defense impeded counsel's efforts to raise the claim." Pelullo, 399 F.3d at 223. In the Brady context, the cause and prejudice requirements,

> "parallel two of the three components of the alleged Brady violation itself." . . . Corresponding to the second Brady component (evidence suppressed by the State), a petitioner shows "cause" when the reason for his failure to develop facts in state-court proceedings was the State's suppression of the relevant evidence; coincident with the third Brady component (prejudice), prejudice within the

compass of the "cause and prejudice" requirement exists when the suppressed evidence is "material" for Brady purposes. . . . Unless suppressed evidence is "material for Brady purposes, [its] suppression [does] not give rise to sufficient prejudice to overcome [a] procedural default." . . . [T]he materiality standard for Brady claims is met when "the favorable evidence could reasonably be taken to put the whole case in such a different light as to undermine confidence in the verdict." In short, [the defendant] must show a "reasonable probability of a different result."

Banks v. Dretke, 540 U.S. 668, 691 (2004) (internal citations omitted).

I conclude that Young cannot demonstrate cause because he cannot show that the Thomas wiretap was "material," i.e., that the failure to provide the wiretap information undermined confidence in the verdict or affected his sentence. Young only argues that the wiretap information would have been relevant to rebut the Government's argument that he was a leader of the YHO.[10] Def. Br. at 30 ("As it turned out, the Thomas wiretap involving Theodore Young, Sr. was extremely relevant and material to the question of who was the leader organizer [sic] of the YHO."). However, being a leader of a drug organization was not an element of any crime for which Young was convicted. It was only an aggravating sentencing factor under the advisory sentencing guidelines. See USSG § 3B1.1 ("Based on the defendant's role in the offense, increase the offense level as follows: (a) If the defendant was an organizer or leader of a criminal activity that involved five or more participants or was otherwise extensive, increase by 4 levels."); see also N.T. 12/6/07 at 31 (applying four-level leadership enhancement). The Application Notes to § 3B1.1 make clear that there can "be more than one person who qualifies as a leader or organizer of a criminal association or conspiracy." USSG § 3B1.1 cmt. n. 4; United States v. Shengyand Zhou, 717 F.3d 1139, 1149 (10th Cir. 2013); United States v. Mariani, 212 F. Supp. 2d

_____

[10] Because he only argues that the Thomas wiretap was material to whether he was a leader of the YHO, and makes no assertion that the material was completely exculpatory, it follows that he cannot use the Government's alleged failure to turn over the material as the basis for an actual innocence argument to excuse the procedural default. In fact, Young makes no actual innocence argument.

361, 371 (M.D. Pa. 2002). Accordingly, the allegation that the Thomas wiretap could have shown that Curly was *a* leader or organizer of the YHO does not create a "reasonable probability of a different result" on the issue of whether Young was *also* a leader, and thus should have received a leadership enhancement in the calculation of his advisory guidelines sentencing range. Because the Thomas wiretap was not material to either culpability or sentencing exposure, it was not <u>Brady</u> material. Because it was not <u>Brady</u> material, Young cannot satisfy the cause and prejudice test. Accordingly, I conclude that this issue is both procedurally defaulted and meritless.

### 3. The interference claim.

Finally, Young raises as a separate claim that the Government's failure to turn over the Thomas wiretap material interfered with his right to effective assistance of counsel. He asserts that "if the government had turned over all <u>Brady</u> material in a timely manner, no doubt trial counsel's strategies would have been different. Possibly trial counsel would have advised the Petitioner [sic] to resolve the case with a guilty plea." Def. Br. at 34. Because I conclude that the Thomas wiretap does not qualify as <u>Brady</u> material, and any motion by counsel to discover the evidence would have been meritless, I also conclude that Young cannot demonstrate merit on his claim that the Government interfered with his Sixth Amendment right to counsel. His argument that counsel's strategy "would have been different" is wholly speculative and unsupported by any facts. His failure to state how counsel might have acted differently, combined with the facts of record that counsel did indeed advise him to accept the plea when it was offered by the Government, fails to establish a basis for holding an evidentiary hearing on the issue. Accordingly, this claim is summarily rejected.

**E.** **Failure to object to the instruction describing drug quantity as a "secondary" question.**

Young's fourth <u>Strickland</u> claim asserts that trial counsel was ineffective in failing to object to the jury instruction regarding drug quantity. Def. Br. at 26. Young argues that the jury instructions "failed to impress upon the jury that drug quantity was a primary element of the offense and as important as any of the other elements." <u>Id.</u> He asserts that counsel's failure to object to the drug quantity instruction was deficient performance and, if a timely objection had been made, there was a reasonable probability that the jury would not have convicted him of a drug crime involving more than one kilogram of heroin. <u>Id.</u> The Government responds that Young's assertion of ineffective assistance due to the failure to object to the instruction is meritless because the Third Circuit, on direct appeal, found proper the very instruction at issue. Gov. Resp. at 10 (citing <u>Lee</u>, 339 Fed. App'x at 162-63).

The relevant portions of the jury instruction on drug quantity are as follows. During the charge on the substantive law, I instructed the jury that:

> In order to find [Young] guilty of Count 31 you need only find that he possessed with intent to distribute a measurable amount of heroin or substance containing a detectible amount of heroin. I will give you special interrogatories that are questions on the verdict sheet as to the amounts of heroin. The issue of drug quantity arises only as a *secondary* question. In the event that you find any of the defendants guilty of Count 1, and or if you find Teddy Young Jr. guilty of Count 31.

N.T. 5/2/07 at 123 (emphasis added). Following the substantive instructions, Attorney Joseph raised the following issue at sidebar:

> THE COURT: Do counsel have any objections or modifications to the charge?
> MR. JOSEPH: I have one. I am not sure this is the government's request (Indiscernible) as to quantity. I might have missed it, but I don't think that you included the whole thing about the weight.
> THE COURT: Well, I am going to go over that when I review the special interrogatories.

MR JOSEPH: Oh, okay. I am sorry.

THE COURT: I decided, since I was going to review the verdict sheet with them at the very end I would not go through the verdict sheet without referring. So, I will cover the quantities.

MR. JOSEPH: All right. Thank you.

Id. at 128-129. Thereafter, in reviewing the special interrogatories, the jury was instructed as follows:

Looking at the verdict form for Teddy Young Jr., the first question asks whether you agree by proof, beyond a reasonable doubt, that defendant Teddy Young Jr. is guilty of conspiracy to knowingly and intentionally distribute a mixture or substance containing a detectable amount of heroin, and or to knowingly and intentionally distribute a mixture or substance containing a detectable amount of heroin within one thousand feet of a school from on or about November 17, 2000, to on or about June 6, 2002.

After your deliberations you will check either not guilty or guilty. Under that Count 1 there are then three interrogatories which I will ask you to complete if you find Teddy Young Jr. guilty of Count 1.

The first has to do with whether the conspiracy involved the distribution of one kilogram or more, the second question asks you if the conspiracy involved one hundred grams or more, and the third asks you if the conspiracy to distribute occurred within one thousand feet of a school.

Those are *secondary* questions which I would like you – which will, in effect, explain your answer to Count 1 in the event that you find the defendant Teddy Young Jr. guilty of Count 1.

N.T. 5/2/07 at 130-31 (emphasis added).

On direct appeal, Young argued that the jury charge "failed to instruct the jury that drug quantity was an element of the offense that had to be proven by [sic] a reasonable doubt, and that the Court's phrase 'secondary question' led the jury to believe that drug quantity was 'not as important' as the other elements of the offense." Lee, 339 F. App'x at 162. The Third Circuit rejected the argument, holding that the instructions were consistent with Apprendi v. New Jersey, 530 U.S. 466 (2000), and that I "neither abused [my] discretion, nor committed plain error, in providing this instruction to the jury." Lee at 162-163.

I conclude that Young's claim that counsel was ineffective for failing to object to the drug

quantity instruction is meritless given the Third Circuit's holding that the jury charge was an accurate statement of the law. The instruction's inclusion of the word "secondary" described only the logical order that the jury was to follow in delivering a verdict; the jury first needed to find Young guilty of conspiracy to distribute or possession and, only if it did so, did it need to answer the questions regarding quantity. Because any objection by counsel to the drug quantity instruction, the order in which the instruction told the jury to approach the issue, or the use of the word "secondary," would have been meritless if actually raised, counsel's failure to object to the charge on drug quantity does not show deficient performance or prejudice. Accordingly, Young's fourth claim of ineffective assistance is summarily rejected as meritless.

**F.     Failure to object to the instruction on the use of accomplice testimony.**

Young's fifth claim alleges that counsel was ineffective for failing to object to the jury instructions on the credibility of accomplice testimony. He argues that the instructions did not "communicate to the jury the special care it must take when evaluating the presumptively unreliable testimony of an accomplice-informant." Def. Br. at 27. He argues that the charge, "taken as a whole, [was] so confusing that it [did] not adequately inform the jury that the testimony of an accomplice is presumptively unreliable, and [did] not address the special concerns about the incentives to fabricate testimony." Id. He asserts that if trial counsel had objected, "there was a reasonable probability of an acquittal inasmuch as the entire case was built on the testimony of accomplices." Id. The Government responds that Young cannot show deficient performance of trial counsel because the jury instruction was a correct statement of the law, and was not contradictory, inconsistent, or confusing. Gov. Br. at 14.

The instruction given to the jury regarding the use of accomplice testimony was as follows:

Agreements to cooperate are expressly approved as lawful and proper by

22

the United States Supreme Court and they are an essential component of the administration of justice.

The testimony of a cooperating witness should be scrutinized with caution. However, a witness who testifies under an agreement with the government is competent to testify, and such testimony may be received in evidence and considered by you *even though not corroborated or supported by other evidence*.

You may give the testimony of a cooperating witness such weight as you feel it deserves.

There are certain classes of witnesses who [sic] testimony must be received with great caution and weighed with great care. These classes include accomplices and informers. . . .

While the testimony of such witnesses should be viewed and weighed with great care and caution, it is nevertheless competent and admissible evidence. As the jury, you should apply the appropriate standard and consider such evidence. You are free to accept all, some or none of the testimony of each such witness.

The fact that an alleged accomplice has entered a plea of guilty to the offense charged is not evidence of the guilt of any other person including the defendants in this trial. . . . Experience has shown that a [sic] accomplices may be motivated to place responsibility on others than themselves. Accordingly, an accomplices [sic] testimony should be closely examined, weighed with great care, checked with the facts which you find to exist in the case and against the evidence which may corroborate them, and that you should give the testimony such value or weight as you deem important under the circumstances.

*Furthermore, as a matter of federal law the uncorroborated testimony of a single accomplice or informant standing alone by itself without any corroboration can be sufficient to overcome the presumption of innocence to meet the government's burden of proof beyond a reasonable doubt and to justify a guilty verdict.*

N.T. 5/2/07 at 89-92 (emphasis added).

I conclude that the accomplice witness instruction was a correct statement of the law; accordingly any contemporaneous objection by counsel would have been meritless and the failure to raise the objection cannot constitute ineffective assistance. The law is clear that, although an accomplice's uncorroborated testimony must be scrutinized closely and checked with the facts that the jury finds present, the jury may still find it sufficient to overcome the defendant's presumption of innocence if it finds that the testimony is credible. See United States v. Perez, 280 F.3d 318 (3d Cir. 2002) (holding that uncorroborated testimony of accomplices or co-conspirators is sufficient

to sustain a conviction); <u>United States v. DeLarosa</u>, 450 F.2d 1057, 1060 (3d Cir. 1971) ("We follow the Supreme Court in holding that uncorroborated accomplice testimony may constitutionally provide the exclusive basis for a criminal conviction.") (citing <u>Caminetti v. United States</u>, 242 U.S. 470 (1917)); Third Circuit Model Jury Instructions § 4.19 cmt (stating that the "government may introduce the testimony of accomplices or co-conspirators, and the uncorroborated testimony of such witnesses is sufficient to sustain a conviction" (citing Perez)).[11] Young cannot satisfy the <u>Strickland</u> test because the failure to object to an instruction that is consistent with Third Circuit and Supreme Court law does not show deficient performance. Accordingly, this claim is also summarily rejected as meritless.

## V.      CONCLUSION

For the aforementioned reasons, Young's motion under 18 U.S.C. § 2255 is denied in its entirety.   An appropriate order follows.

---

[11] Young's assertion that the jury should have been instructed that in-court accomplice testimony offered at his trial was "presumptively unreliable" is not supported by the cases he cites, <u>Bruton v. United States</u>, 391 U.S. 123, 136 (1968), <u>Lee v. Illinois</u>, 476 U.S. 530, 541 (1986), and <u>Cruz v. New York</u>, 481 U.S. 186, 195 (1987).   These decisions all addressed the Confrontation Clause issue of admitting into evidence the out of court confessions of accomplices.   Because Young is not asserting a <u>Bruton</u> issue as the underlying basis of his ineffective assistance argument, his citations are inapposite.